# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA**

v.                                                                           Case No.: 8:18-CR-205-T-WFJ-TGW

**RAYMY ESCOTO**

_____/

## SENTENCING MEMORANDUM

Defendant, Raymy Escoto, by and through his undersigned counsel, and pursuant to 18 U.S.C. § 3553(a), hereby files this memorandum, and requests a sentence within the the advisory guideline range. This memorandum incorporates Defendant's Objection to Certain Facts Contained within the Court's Sentencing Memorandum (Doc. 493), and also addresses the Court's concerns outlined in Documents 420 and 427.

    I. <u>Statement of the Case and Outline of the Argument</u>

On September 25, 2019, this Court accepted Mr. Escoto's guilty plea to Count Seven of the Superseding Indictment, which charges Mr. Escoto with arson in violation of 18 U.S.C. §844(i).

United States Probation calculates Mr. Escoto's advisory guideline range at base level 12, criminal history IV. (Dkt. 485, PSR ¶133). The United States filed a §5K1.1 motion for substantial assistance, and requests a one level reduction. (Doc. 426). If the 5K1.1 motion for downward departure is applied, Defendant's advisory guideline range is base level 11, criminal history IV, 18-24 months.

Prior to the factual and legal arguments presented in this memorandum, Mr. Escoto would like counsel to convey his deepest sympathies for the death of Julio Tellez. Mr. Escoto

has had almost two years in custody to reflect on that day, and the type of lifestyle he was living prior to January 1, 2016. Mr. Escoto deeply regrets his decision to participate in the burning of the red mustang that was used in the drive by shooting. He regrets his decision to rely on drugs and alcohol, rather than on his higher power. He regrets that a person died that day. In the end, all Mr. Escoto can do is make his amends, move forward by living a different kind of life, and use lessons learned by his past to build a more solid future.

## II. Sentencing Guidelines Are Advisory

After United States v. Booker, 543 U.S. 2209, 125 S. Ct. 738 (2005), sentencing requires a two-step process. The procedure was further clarified in Gall v. United States, 522 U.S. 38, 128 S. Ct. (2007). First, the district court must consult the United States Sentencing Guidelines and correctly calculate the sentencing range provided by the Guidelines. United States v. Livesy, 525 F.3d 1081, 1089 (11th Cir. 2008). Second, the district court must consider the factors outlined in 18 U.S.C. § 3553(a) to determine a reasonable sentence for the individualized case. Id. Moreover, as Gall makes clear, the sentencing court "must make an individual assessment based on the facts presented." Gall, 522 U.S. at 50. As outlined in this memorandum, an individual assessment based on the facts presented calls for a sentence within the advisory guideline range.

## III. Court Order Document 427: The Correct Base Level Offense is the Offense for Arson, Chapter 2K1.4

In Document 427, the Court requests that parties show cause why the appropriate starting offense level is not U.S.S.G. §2A1.1, application note 2(b). For the reasons discussed below, this guideline does not apply.

Mr. Escoto pled to one count of arson in violation of 18 U.S.C. §844(i). The applicable guideline for a violation of Arson pursuant to 18 U.S.C. §844(i) is found only in U.S.S.G §2K1.4, as outlined by United States Probation. If the facts warrant that the arson was committed to cover up another crime, section 2K1.4 specifically addresses this situation, and calls for an upward departure of 2 levels. See 2K1.4(b)(1). Probation applied this two level enhancement to the guideline range based on the facts contained in the plea agreement. (Doc. 485). The only way for the Court to get out from under the Arson chapter is to apply the cross reference; however, the cross reference does not apply.

In section 2K1.4(c), the cross reference states that "[i]f death resulted, or the offense was intended to cause death or serious bodily injury, apply the most analogous guideline from Chapter Two, Part A (Offenses Against the Person) if the resulting offense level is greater than that determined above." The "offense" in this case is arson, and the offense of arson did not result in a death and was not intended to cause a death or serious bodily injury, so the cross-reference does not apply, and the applicable guideline chapter as to the facts in this case is the Arson chapter.

The Eleventh Circuit's decision in United States v. Mock, 523 F.3d 1299 (11th Cir. 2008) is highly instructive. In Mock, the defendant was convicted of setting fires in the stairwells of fourteen apartment buildings. At sentencing, the district court applied the cross reference listed in §2K1.4(c) and applied the attempted first-degree murder guideline contained in section 2A2.1. The Eleventh Circuit reversed stating "for the cross-reference to apply, however, a preponderance of the evidence must show that [the defendant] intended to cause death or serious bodily injury *in setting the two larger fires*." Id. at 1304 (emphasis added). The Court held that

the evidence did not show that the defendant intended to cause death or serious bodily injury by setting the two larger fires, so the cross-reference did not apply.

The same holds true for the case before this Court. There is no dispute that the burning of the red mustang was not intended to cause death or serious bodily injury to anyone. The red mustang was burned in a vacant lot. The only connection between the death of Julio Tellez and the arson is that the arson was intended to cover up a crime, a factual scenario that is specifically contemplated as an enhancement in the Arson Chapter, an enhancement applied in this case by United States Probation.

Accordingly, the only starting offense level for the crime of arson based on the facts before this Court is contained in the Chapter for Arson, section 2K1.4. The guideline chapter for homicide, aggravated assault, and accessory after the fact do not meet the standard for the cross reference as explained by the Eleventh Circuit in <u>Mock</u>. Therefore, United States probation has correctly calculated the guideline range in the PSR.

IV. <u>Court Order Document 420: Most of the Possible Reason's For an Upward Departure as Set for in this Court's Order, Document 420, Do Not Apply</u>

In Document 420, the Court requests that parties be prepared to discuss a number of reasons why this Court should not apply an upward departure or variance. Defendant addresses each in turn.

    1.    <u>Due Process Consideration: Preponderance of the Evidence v. Clear and Convincing</u>

First, counsel would like to address the standard of proof the United States must meet to establish facts at sentencing. At sentencing, among the factual findings a district court may make is whether a preponderance of the evidence supports the application of a sentence enhancement. See <u>United States v. Victor</u>, 719 F.3d 1288, 1290 (11th Cir. 2013) (reviewing as a finding of fact the district court's imposition of a sentence enhancement, and noting that the

prosecution must establish the applicability of an enhancement by a preponderance of the evidence). As more fully explained in Mr. Escoto's Objection to certain facts contained within the Court's Sentencing Memorandum, Mr. Escoto argues that the facts and evidence outlined in the Court's memorandum do not even rise to the level of a preponderance of the evidence, because most of evidence was established by a person who perjured himself before a grand jury about Mr. Escoto's involvement in the Tellez drive by shooting.

In United States v. John Cintron Malave, 8:19-CR-462, Mr. Cintron was indicted and convicted for obstruction of justice by providing false statements to a grand jury about Mr. Escoto's role in the murder of Julio Tellez. Mr. Cintron provided these same false statements to the United States Attorney's office and federal agents during the entire course of the government's investigation into the murder of Julio Tellez. Mr. Cintron lied about Mr. Escoto's role in the Tellez murder to cover up his own involvement in the murder. Mr. Escoto submits that anything Mr. Cintron testified to concerning Mr. Escoto's role in the Tellez murder should be wholly rejected as untrustworthy under any standard of proof.

However, if this Court were to give consideration to the Mr. Cintron's testimony and contemplate an upward departure or variance to Mr. Escoto's sentence by a large range, i.e. doubling or more than doubling his guideline range, Mr. Escoto argues that due process demands that this Court require that the government prove up such facts by a clear and convincing standard. See United States v. Staten, 466 F.3d 708, 717-18 (9th Cir. 2006)(holding where the district court enhanced the defendant's offense level by fifteen levels, such an enhancement required the government to prove up the facts by a clear and convincing standard to comport with due process).

Wherefore, since Mr. Escoto was not present at trial, and did not have the opportunity to cross examine witnesses, especially the witness who previously lied under oath to a grand jury about Mr. Escoto's role in the Tellez murder, Mr. Escoto submits that the facts surrounding Mr. Escoto's role in the Tellez murder, as outlined in the Court's Sentencing Memorandum, were not proved by a preponderance of the evidence, and an evidentiary hearing is required. In addition, if this Court is contemplating a disproportionate increase in Mr. Escoto's guideline rage, such as doubling the range, due process requires that this Court require that the government prove up Mr. Escoto's conduct by a clear and convincing standard at sentencing.

2. Totality of the Circumstance: Section 5K2.0(a)

The Court's question as to whether the totality of the circumstances necessitates an upward departure turns in large part upon what are the "facts" are surrounding Mr. Escoto's involvement in the drive by shooting of Julio Tellez. Section 5K2.0(a) gives a court the authority to upwardly depart if the court finds aggravating circumstances pursuant to 18 U.S.C. §3553(b)(1), discussed below, or whether the court finds this is an "exceptional case" in which the circumstances surrounding the offense are substantially in excess of "that which ordinarily is involved in that kind of offense."

Whether to apply an upward departure depends on Mr. Escoto's conduct surrounding the burning of the red mustang, and his role in the drive by shooting of Mr. Julio Tellez. As outlined in Mr. Escoto's objection to certain facts contained within the Court's Sentencing Memorandum, Mr. Escoto did not supply a firearm to Mr. Cintron and was not in the backseat of the red mustang at the time of the drive by shooting.

If this Court wishes to enhance Mr. Escoto based on the fact he assisted in burning a car that was used in a drive by shooting, Mr. Escoto understands this, and is willing to accept the

Court's sentence. However, if this Court wishes to enhance Mr. Escoto because he supplied Mr. Cintron with the gun that was used in the shooting, and rode in the back seat of the red mustang during the shooting, Mr. Escoto objects that these are the facts.

Without going into the level of detail contained in Mr. Escoto's objections to certain facts contained in the Court's memorandum, Mr. Escoto pled to one stand alone count of arson after the United States agreed to drop all the counts that would have required Mr. Escoto admit that he was a member of a RICO conspiracy, that he supplied anyone with a gun, or was even present at the time of the Tellez shooting. If these charges, and therefore, these facts, were not dismissed, Mr. Escoto was unquestionably going to trial to contest this evidence and the witnesses who would have attempted to establish such facts. Mr. Escoto did not go to trial. All charges other than the stand-alone arson charge were dropped by the United States, and Mr. Escoto never admitted to any fact other than assisting in burning the red mustang after the shooting of Julio Tellez.

Therefore, whether this Court upwardly departs based on the "totality of the circumstances" turns on what this Court determines were the "circumstances," or more specifically, what Mr. Escoto's conduct and role was during the Tellez murder. Mr. Escoto is ready to accept any sentence this Court hands down based on his conduct of burning the red mustang after it was involved in a drive by shooting, but not based on unchallenged facts that he supplied a gun or was present during the Tellez murder.

3. <u>Nature of the Activity as Shown by the Dismissed Charges: 5K2.21</u>

The Court also directs parties to be prepared to discuss why the Court should not upwardly depart based on the nature of the activity shown in the dismissed charges. This section, as to why this Court should not upwardly enhance Mr. Escoto's sentence based on the

charges that the United States dismissed after learning that Mr. Cintron lied about Mr. Escoto's role in the Tellez murder, is fully addressed in the other sections.

    4.    <u>Concealment of Other Offenses: 5K2.9</u>

Section 5K2.9 states that "[i]f the defendant committed the offense in order to facilitate or conceal the commission of another offense, the Court may increase the sentence above the guideline range to reflect the seriousness of the defendant's conduct." First, this section is duplicative of section 2K1.4(b)(1), which states that if the arson was committed to conceal another offense, increase by two levels.[1] United States probation has increased Mr. Escoto's guideline range by two levels, because the arson was committed to conceal another offense.

Second, and more importantly, section 5K2.9 allows the Court to upwardly vary "to reflect the seriousness of the defendant's conduct;" however, Mr. Escoto's role in the murder of Julio Tellez is not that which is outlined in the Court's Sentencing Memorandum. Mr. Escoto did not provide a gun to Mr. Cintron before the Tellez murder. Mr. Escoto did not go to Jordan Rodriguez's house before the Tellez murder and wipe down bullets. Mr. Escoto did not ride in the back seat of the red mustang during the drive by shooting of Julio Tellez. If the Court plans to upwardly depart under section 5K2.9 based on these facts, Mr. Escoto objects, and requests an evidentiary hearing.

Mr. Escoto has always maintained that Mr. Cintron had his own gun. Mr. Escoto was dropped off at his house prior to the drive-by shooting, and was picked up after the shooting. Mr. Escoto did assist in burning the red mustang after he and others learned that someone was killed in the drive-by shooting. Mr. Escoto cannot take his actions back, though he wishes he

---

[1] "Impermissible double counting occurs only when one part of the Guideline is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by the application of another part of the Guidelines." <u>United States v. Matos-Rodriguez</u>, 188 F.3d 1300, 1309-10 (11th Cir. 1999).

could. Julio Tellez was killed. Mr. Escoto wishes there was someway to undo this terrible fact, but there is not. If the Court intends to upwardly depart because Mr. Escoto burned a vehicle that was used in a drive by shooting, Mr. Escoto accepts this and awaits sentencing by the Court.

    5.    <u>Physical Injury: 5K2.2</u>

Mr. Escoto submits that this section does not apply to the facts of this case. Mr. Escoto pled to one count of stand-alone arson, in which he assisted others in burning a car that was used in a drive by shooting. No physical injury occurred to anyone as a result of this conduct; and, therefore, this section does not apply. The injury to Julio Tellez had already occurred and was not impacted by Mr. Escoto's decision to participate in the burning of the red mustang. Accordingly, this section does not apply.

    6.    <u>That the Offense is Outside the Heartland of Offenses Contemplated by the Advisory Guideline Level: Section 5K2.0(a)(3) and 18 U.S.C. §3553(b)(1)</u>

Section 5K2.0(a)(3) states that a departure may be warranted "if the court determines that such circumstance is present in the offense to a degree substantially in excess of, or substantially below, that which ordinarily is involved in that kind of offense." Similarly, 18 U.S.C. §3553(b)(1) states that a court can depart upward or downward if "there exits an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." Essentially these two sections say the same thing, that is, a court can upwardly depart if the facts of the case are such as not adequately contemplated by the arson guideline.

The only way that the arson guideline would not adequately cover Mr. Escoto's conduct is if the Court finds that Mr. Cintron's trial statements about Mr. Escoto's role in the Tellez murder were truthful. We submit his statements are not. Without Mr. Cintron's statements, Mr. Escoto agreed to participate in burning a vehicle that was used as the lead car in a drive by

shooting. Such conduct is adequately addressed in the arson guideline under section 2K1.4(b)(1), which calls for an increase by two levels if the arson was committed to conceal another offense. If this Court determines that two levels is not sufficient to adequately punish Mr. Escoto for burning a car that was used in a drive by shooting, Mr. Escoto accepts the Court's upward departure. Mr. Escoto only objects if this Court decides to apply an upward departure, because he supplied Mr. Cintron with a gun, and then rode in the backseat during the Tellez murder, before Mr. Escoto decided to assist in burning the car. Accordingly, Mr. Escoto submits that the facts, as to his actual conduct, are contemplated by the arson chapter of the guidelines, and an upward departure, based on section 5K2.0(a)(3) and 18 U.S.C. §3553(b)(1), is not warranted.

7. <u>For Any Other Grounds Contemplated by 18 U.S.C. §3553(a)</u>

Based on the section 3553(a) factors, this Court should not vary from the advisory guideline range. Under Section 3553, "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Paragraph 2 states that the court shall consider a number of factors as outlined below.

A. <u>The Nature and Circumstances of the Offense</u>

Mr. Escoto pled guilty to one count of arson. While initially charged with a number of counts alleging that Mr. Escoto was a shooter in a drive by shooting and other criminal activity associated with a RICO conspiracy, the government chose to dismiss all of the counts against Mr. Escoto. As to the most serious charges, murder in Aid of Racketeering (Count Four), conspiracy to Commit Murder in Aide of Racketeering (Count Three), Use of a Firearm in Relation to a Crime of Violence (Count Five), the government learned that the evidence used to support these charges was secured by perjured testimony before the grand jury. As to the other

RICO criminal predicate acts: possessing marijuana with the intent to distribute, burglary of a home, and evading law enforcement, Mr. Escoto was prepared to go to trial to dispute these allegations, but in the end, the government chose not to pursue these allegations.

For twenty months, Mr. Escoto sat in jail facing a mandatory life sentencing for something he did not do. For five of those months, Mr. Escoto was held in solitary confinement in the Hillsborough County jail, not for any disciplinary problems, but as a way to keep him separate from his co-defendants. Magistrate Judge Wilson later ordered that Mr. Escoto be released from solitary confinement, because there was no justification for such confinement.

For twenty months, Mr. Escoto felt the full weight of the United States of America's Justice Department pressing down on him, alleging he was a shooter in a drive by shooting and part of a RICO conspiracy. For such conduct, Mr. Escoto knew that the United States was prepared to send Mr. Escoto to prison for the rest of his life. The strain upon Mr. Escoto during these months, especially the months spent in solitary confinement, was palpable. In our meetings, we spent a great deal of time not even talking about the facts and the evidence in the case. We focused on Mr. Escoto's mental health, and also in his faith that the truth would ultimately come out. Mr. Escoto's belief in God, his faith that somehow the United States would understand that he was not the person who they thought he was, that he did not commit the crimes he was charged with, would come to light was extraordinary. Sometimes we would sit in silence, letting the magnitude of the situation, and the task before us sink in, and in those moments, silence was only counsel I could give, the only counsel Mr. Escoto could receive.

In the end, the truth did come out. Mr. Cintron did in fact lie about Mr. Escoto's role in the drive by shooting. Mr. Cintron lied to protect himself. Mr. Cintron lied to conceal the fact that he was the shooter, not Mr. Escoto. We submit that this Court should not consider any facts

or evidence supplied by Mr. Cintron as to Mr. Escoto's role in the murder of Julio Tellez. Mr. Cintron was indicted and convicted for obstruction of justice concerning the facts he gave to the United States Attorney's office, to federal agents, and to the grand jury about Mr. Escoto's role in the Tellez murder. The United States dropped the murder in aide of racketeering charges and the RICO charge against Mr. Escoto. This Court should not now enhance Mr. Escoto based on "facts" that Mr. Escoto fought so vehemently against, and was prepared to risk his life to contest.

      B.  <u>Mr. Escoto's Personal History</u>

The "history and characteristics of the defendant" are also among the first factors that a court is instructed to consider in sentencing. <u>See</u> 18 U.S.C. § 3553(a)(1).

From early in life, Mr. Escoto suffered from mental health issues that were acerbated by events that occurred during his childhood. When he was 14 years old, Mr. Escoto was sexually abused by a neighbor. When he was 15 years old, Mr. Escoto tried to commit suicide by cutting this throat. Mr. Escoto has been diagnosed with bi-polar and depressive disorder.

As is far too often the case, when a young person is suffering from an illness of the mind, such an illness, when not treated, can literally take a person into the valley of death. In such a situation, a person sometimes turns to chemical substances to relieve the pressure. Such was the case with Mr. Escoto. He began smoking marijuana after he was sexually abused, and also became addicted to Xanax. These drugs, coupled with his mental health issues and no direction in life, lead him to where he is today, in jail facing sentencing by this Court.

Since his incarceration, Mr. Escoto has become sober, his mind has cleared, and his path forward is even clearer. Undersigned counsel has witnessed a remarkable change in Mr. Escoto, even as he prepared for a possible lifetime prison sentence if convicted at trial. Mr. Escoto found an inner calmness, the only place where calmness can spring forth. He relies on faith in his

higher power. Such statements sound cliché, but sometimes there is truth, a verifiable truth, in clichés, and such is the case with Mr. Escoto. Along the way, undersigned counsel began to look forward to our visits, especially when listening to Mr. Escoto discuss a book he was reading, or just reflecting on his past and plans for the future. Mr. Escoto wants to be a barber, own his own shop, and live a simple life with his children. All the noise and confusion that surrounded his life prior to incarceration are gone, and he is left with a stillness.

### C. Adequate Deterrence to Criminal Conduct

Mr. Escoto spent over eighteen months in jail facing mandatory life in prison for crimes he did not commit. The pressure Mr. Escoto was under, trying to get the government to believe that he was not a shooter in a drive by shooting, was immense. The strain took a great toll on Mr. Escoto. During many of our meetings, he openly wept, commenting that the United States never loses a RICO case, and he was going to spend the rest of his life in prison. Mr. Escoto spent five of the eighteen months in solitary confinement, before Judge Wilson ordered that he be released to general population.

Even under this immense strain, Mr. Escoto and undersigned counsel built a defense, and were ready for trial when the government called to inform us that the government no longer intended to prosecute the most serious charges against Mr. Escoto. Many times, Mr. Escoto told undersigned counsel that the truth would come out, and the truth eventually did come out. Mr. Cintron had indeed lied about Mr. Escoto's role in the Tellez murder to protect himself, as Mr. Escoto correctly claimed for years. Mr. Escoto suffered mentally and physically as he faced a life prison sentence for crimes and conduct he did not commit. Mr. Escoto almost lost his life because of the choices he made, choices he will not make again. We ask that the Court take this

into consideration when addressing whether a guideline sentence is appropriate to deter future criminal conduct.

### D. Protect the Public from Further Crimes

A long-term prison sentence is not necessary to protect the public from Mr. Escoto. Mr. Escoto almost lost his life because of the lifestyle he was living, and the people he was associating with. While in custody, Mr. Escoto has maintained sobriety, his mind has cleared, his faith has strengthened, and the path before him has unfolded. Mr. Escoto is a child of God, a father, a son, a friend, and a repentant man, no more, no less. Mr. Escoto knows that words, even these words that his counsel writes to this Court, are just that, words. Actions are what matters, and Mr. Escoto is ready and willing to accept responsibility for his actions, while at the same time, let the Court know he has made a decision to embark upon a life of new actions, actions that the public will not need protection from.

## V. Conclusion

Mr. Escoto has made many mistakes in his young life, mistakes that have lead him before this Court. Mr. Escoto has taken responsibility for his actions, and fully understands that the Court might upwardly depart from the advisory guidelines based on his actions. Mr. Escoto is ready to accept such a sentence and continue to move forward. All Mr. Escoto asks is that this Court apply his actual conduct to the guidelines when fashioning an appropriate sentence.

Accordingly, Mr. Escoto requests that the Court consider the information outlined in this memorandum in determining his sentence, and sentence him within the guideline range.

I HEREBY CERTIFY that a copy of the foregoing notice has been furnished by electronic filing using the CM/ECF system to Natalie Adams, United States Attorney's Office, this 24th day of February, 2020.

Respectfully submitted,

s/William Sansone
WILLIAM SANSONE, ESQUIRE
Sansone Law, P.A.
609 West De Leon Street
Tampa, FL  33606
Telephone: (813) 361-0874
Facsimile: (813) 251-1808
Email: sansonew@gmail.com
Florida Bar # 781231