[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11048
Non-Argument Calendar
_____

D.C. Docket No. 8:18-cr-00205-WFJ-TGW-5


UNITED STATES OF AMERICA,

                                                Plaintiff - Appellee,

versus

RAYMY ESCOTO,

                                                Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 8, 2021)

Before MARTIN, JORDAN, and GRANT, Circuit Judges.

PER CURIAM:

Raymy Escoto appeals his sentence for arson. He argues that his sentence of 144 months' imprisonment, a product of an 84-month upward variance, is

substantively unreasonable because it was based on facts the sentencing judge should not have considered, and an erroneous analysis of the 18 U.S.C. § 3553(a) sentencing factors. After careful consideration, we affirm Escoto's sentence.

## I.

In 2016, Escoto participated in the burning of a red Ford Mustang used in a drive-by shooting that resulted in the death of Julio Tellez. Escoto and others did "donuts" in the Mustang before setting it on fire. Initially, he was indicted on a number of charges related to a racketeering conspiracy, including the drive-by shooting itself and arson. In 2019, a grand jury issued a superseding indictment with three additional charges, including murder in aid of racketeering. In 2019, Escoto pled guilty to arson in violation of 18 U.S.C. § 844(i), which carries a mandatory minimum sentence of 5 years' imprisonment and a maximum penalty of 20 years' imprisonment. The government ultimately dismissed all counts against Escoto except the lone count of arson.

Escoto's presentence investigation report ("PSR") first recited facts related to his participation in a racketeering enterprise, including the fact that Escoto "was a member of the Enterprise whose responsibilities included participating in murder, arson, burglary, robbery, battery, and other acts of violence and intimidation; distributing controlled substances; and destroying evidence of the criminal activities of the Enterprise," and that he "assaulted, battered, and robbed" someone

2

in December 2015. The PSR then stated that after two of his codefendants got into a fight with rival gang members at a gas station, they picked Escoto up, acquired guns and ammunition, and drove to Tellez's house where they shot and killed him. Escoto objected to this part of the PSR and claimed that his codefendants only picked him up after they had murdered Tellez. He did not object to any other facts in the PSR.

Escoto's PSR began with a base offense level of 12 and then added a two-level increase under United States Sentencing Guideline § 2K1.4(b)(1) because the arson was committed to conceal another offense, the murder of Tellez. The PSR originally identified Escoto's Guidelines range as 21–27 months' imprisonment, but because arson carries a statutory mandatory minimum of 5 years' imprisonment, the PSR set his Guidelines range at 60 months.

Before sentencing, the district court filed its own sentencing memorandum in which it set out the facts it intended to rely upon. The district court stated that the evidence at three of Escoto's codefendants' trial "established a racketeering enterprise through which these defendants and others conspired to control a geographic territory." It also said that Escoto provided the gun that was used to murder Tellez, helped to plan the shooting, and was riding in the Mustang when Tellez was shot. The district court's sentencing memorandum also described the arson that occurred afterward.

3

Escoto filed a written objection to the facts contained in the district court's sentencing memorandum. Specifically, Escoto denied that he "1) was a member of a [Racketeer Influenced and Corrupt Organizations Act ("RICO")] conspiracy; 2) provided a gun to [a codefendant] used in the drive by shooting of Julio Tellez; and 3) was in the back seat of the red [M]ustang at the time of the drive by shooting." Escoto went into detail to explain his version of events on the day of the drive-by shooting but never identified which facts he was objecting to that established his membership in a RICO conspiracy.

At sentencing, Escoto reiterated his objection to the paragraph in the PSR stating he had provided the gun used in the shooting, had helped plan the shooting, and was in the Mustang at the time of the shooting. The district court sustained the objection and had Escoto's name stricken from that paragraph of the PSR.

The district court sentenced Escoto to 144 months' imprisonment, varying upward by 84 months from the Guidelines range of 60 months. The district court found this upward variance was needed to "reflect the actual seriousness of [Escoto's] offense, promote respect for the law, [and] provide just punishment for the offense." In justifying the upward variance, the court pointed to the fact that Escoto was "an active and aggressive accessory after the fact to a murder and a perpetrator of misprision of felony murder." The district court noted that "credible trial evidence" supported the assertion that Escoto was in the Mustang at the time

4

of the shooting, but stated that the variance was warranted even "based on Escoto's claimed version of the facts." The district court observed that the Sentencing Guidelines did not adequately reflect the seriousness of the crime that the arson was meant to conceal, noting that the "guidelines here would be the same if the Defendant stole eggs and burned down the ramshackle chicken coop to hide his crime." The court also reasoned that the variance was required to reflect the "cavalier manner of the arson," as evidenced by the fact that Escoto "first enjoyed driving 'donuts'" in the Mustang before burning it. The district court noted that Escoto was "an active member in a racketeering enterprise that committed myriad violent, armed crimes and drug trafficking," and stated that the variance was necessary to deter others in Escoto's community from engaging in the same behavior and to protect the public from Escoto. Finally, the district court noted that Escoto "has a Criminal History category of IV and lengthy prison history at a young age" which supported the need for an upward variance that would "protect the public."

A number of other people were convicted and sentenced for conduct related to the drive-by shooting, arson, and racketeering enterprise. John Cintron, who was a minor at the time of the offense, pled guilty to one count of murder in aid of racketeering and one count of arson and was sentenced to 48 months' imprisonment for those crimes. Jesse Rodriguez pled guilty to racketeering

5

conspiracy, drug conspiracy, and using a drug premises and was sentenced to 37 months' imprisonment. Phillip Uscanga pled guilty to arson and was sentenced to 144 months' imprisonment. Three others were tried and convicted by a jury of RICO, drug-distribution, murder in aid of racketeering and various other offenses.

Escoto timely appealed his sentence.

## II.

We review a district court's sentencing decision for abuse of discretion. United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir. 2009). "The party challenging the sentence bears the burden of establishing that the sentence is unreasonable in light of the record and the § 3553(a) factors." United States v. Early, 686 F.3d 1219, 1221 (11th Cir. 2012).

When reviewing the substantive reasonableness of a sentence, we consider "the totality of the circumstances," including the extent of any variance from the Sentencing Guidelines. Shaw, 560 F.3d at 1237. A sentence may be substantively unreasonable if it was selected arbitrarily, based upon impermissible § 3553(a) factors, or if the district court failed to consider pertinent § 3553(a) factors. United States v. Pugh, 515 F.3d 1179, 1191–92 (11th Cir. 2008). Nonetheless, we will only remand for resentencing when "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of

6

reasonable sentences dictated by the facts of the case." Id. at 1191 (quotation marks omitted).

Escoto argues that his sentence is substantively unreasonable for two reasons. First, he argues that the district court relied on impermissible facts when it varied his sentence upward by 84 months. Second, he argues the district court improperly analyzed the § 3553(a) factors. We address each in turn.

A.

Escoto claims the district court justified the considerable upward variance in his sentence based on facts that have no support in the record. Escoto says that the district court improperly relied on two sets of facts: (1) those indicating that Escoto was involved in planning and executing the Tellez murder; and (2) those indicating that Escoto participated in a racketeering conspiracy.

This record does not support Escoto's claim that the district court relied on evidence linking Escoto to the planning and execution of the Tellez murder. Escoto points to statements in the district court's order expressing skepticism about Escoto's version of events. But the district court clearly stated it was setting aside any doubts on this point when it explained that "[e]ven viewed in a light most favorable to the Defendant and based on Escoto's claimed version of the facts," the upward variance was warranted. The district court sustained Escoto's objection to

7

the facts in the PSR about his participation in the Tellez murder and never cited them as a reason supporting the upward variance.

In contrast, the district court did cite Escoto's membership "in a racketeering enterprise that committed myriad violent, armed crimes and drug trafficking" as supporting the upward variance. The district court relied on "all the evidence" from the PSR and the codefendants' trial for the facts connecting Escoto to the racketeering conspiracy. Escoto argues that the district court could not rely on these sources to support the upward variance.

A sentencing court may rely on undisputed statements contained in a PSR. United States v. Bennett, 472 F.3d 825, 832 (11th Cir. 2006) (per curiam). When a defendant objects to the factual basis for the sentence, the burden shifts to the government to establish the disputed fact. Id. But the challenge to the facts "must be asserted with specificity and clarity"; otherwise any objection to those facts "is waived." Id. Escoto did not object to the numerous paragraphs in the PSR that recite facts relating to his participation in the racketeering conspiracy. He objected only to the paragraph that stated he helped to plan and was in the Mustang at the time of the Tellez murder, an objection that the district court sustained. Escoto says he did not need to object to the other facts because the PSR had "simply regurgitated" the dismissed counts against him. Escoto also says he sufficiently objected to these facts in his filing responding to the district court's sentencing

8

memorandum. But in that filing, Escoto makes only a broad, conclusory objection to any facts establishing that he "was a member of a RICO conspiracy."[1] He never addresses which facts in the PSR that establish his membership in the racketeering enterprise are supposedly incorrect. Because Escoto did not object to these facts "with specificity and clarity," he waived his objection, and the district court was entitled to rely upon them at sentencing. See id.

Further, a sentencing court may rely on evidence from a third party's trial so long as the defendant is given the opportunity to rebut that evidence. United States v. Castellanos, 904 F.2d 1490, 1496 (11th Cir. 1990). The district court explicitly put Escoto on notice that it was relying on evidence from his codefendants' trial when it filed its own sentencing memorandum in which it cited that evidence for the proposition that Escoto was a member of the racketeering enterprise. On this record, the district court did not err in relying on evidence from Escoto's codefendants' trial.

B.

Escoto next argues the district court did not properly analyze the § 3553(a) factors. Although sentencing courts are required to consider the § 3553(a) factors, see Chavez-Meza v. United States, 585 U.S. ___, 138 S. Ct. 1959, 1963 (2018), the

---

[1] This contrasts with the way Escoto provided specific and detailed objections to the facts in the PSR and sentencing memorandum placing him in the Mustang at the time of the Tellez murder.

9

district court does not have to explicitly discuss each factor it is required to consider, United States v. Kuhlman, 711 F.3d 1321, 1326 (11th Cir. 2013).  The record need only indicate that the district court considered some of the factors.  See United States v. Dorman, 488 F.3d 936, 944 (11th Cir. 2007) (recognizing the record indicated the district court "did, in fact, consider a number of the sentencing factors").  Further, the "weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court, and we will not substitute our judgment in weighing the relevant factors." United States v. Amedeo, 487 F.3d 823, 832 (11th Cir. 2007) (quotation marks omitted and alterations adopted).  Escoto says the district court improperly analyzed the § 3553(a) factors in different ways.  We address them in turn.

Escoto argues the district court failed to consider the "nature and circumstances" of the arson.  But the district court determined that the Sentencing Guidelines range did not account for the "seriousness of the offense" that the arson was intended to conceal, noting that "[t]he sentencing guidelines here would be the same if the Defendant stole eggs and burned down the ramshackle chicken coop to hide his crime."  See 18 U.S.C. § 3553(a)(2)(A).  The district court also reasoned that the "cavalier manner of the arson," evidenced by Escoto driving "donuts" in the Mustang before burning it, also justified the upward variance.  Notably, Escoto conceded that the Guidelines range of 60 months' imprisonment might not be

10

sufficient to reflect the seriousness of the crime that the arson was meant to conceal and would be "willing to accept" an upward variance based on that factor.

Escoto says the district court improperly varied upward to "send a message" to the broader community. But § 3553(a) requires the district court to consider "deterrence to criminal conduct" when imposing a sentence. 18 U.S.C. § 3553(a)(2)(B). In other words, § 3553 recognizes the importance of using a sentence to send a message to the broader community about the relevant offense. And the district court determined that this upward variance was necessary in order to "provide deterrence to others." Therefore, the district court was simply considering a factor it was required to consider.

Escoto claims the district court failed to consider his criminal history in imposing his sentence, which is one of the § 3553(a) factors. See 18 U.S.C. § 3553(a)(1). But the district court did note that Escoto "has a Criminal History category of IV and lengthy prison history at a young age" and reasoned that this history supported the need for an upward variance that would "protect the public." See 18 U.S.C. § 3553(a)(2)(C).

Similarly, Escoto claims the district court "wholly cast[] aside the consideration of the guidelines" in imposing the 144-month sentence, even though the Guidelines range is one of the § 3553(a) factors. See 18 U.S.C. § 3553(a)(4). But the district court expressly noted that Escoto's Guidelines range was 60

11

months and then explained at some length why it was varying upward from that sentence.  This shows us that the district court did consider the Guidelines range in sentencing Escoto.

Escoto also asserts that his sentence is unreasonably disparate from the sentences of his codefendants, which goes against the "need to avoid unwarranted sentence disparities among defendants." 18 U.S.C. § 3553(a)(6).  But the purported disparities are easily attributable to the different circumstances of the individual defendants.  See United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009) ("A well-founded claim of disparity . . . assumes that apples are being compared to apples." (quotation marks omitted)).  Escoto complains that Cintron, who pleaded guilty to murder in aid of racketeering in addition to arson, received a lower sentence.  But Cintron was a juvenile at the time of the offense, and this put him in a markedly different position from Escoto.  Rodriguez, another comparator that Escoto points to, pled guilty to only racketeering and drug counts and did not plead guilty to arson.  Each of these facts easily accounts for Rodriguez's lower sentence.  Escoto also argues that imposing the same sentence on him and Uscanga is a disparity because Uscanga actually participated in the Tellez murder.  But it is clear from the district court's order that, in the end, the district court weighed more heavily the seriousness of the offense the arson was meant to conceal and both defendants' participation in the racketeering enterprise.  Without more, we are not

entitled to "substitute our judgment" for the district court's when it comes to the "weight to be accorded any given § 3553(a) factor." Amedeo, 487 F.3d at 832.[2]

**AFFIRMED.**

---

[2] Escoto also argues that his case should be remanded to a different district court judge for re-sentencing.  Because we affirm Escoto's sentence, we need not reach that issue.

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

February 08, 2021

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 20-11048-JJ
Case Style: USA v. Raymy Escoto
District Court Docket No: 8:18-cr-00205-WFJ-TGW-5

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Tiffany A. Tucker, JJ at (404)335-6193.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion